IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALENTA M. POKE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. 1:12-cv-189-TFM |
| | )    [wo] |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

In March 2009, Valenta M. Poke ("Plaintiff" or "Poke") originally applied for Supplemental Social Security Income under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1484f. (Tr. 233-34). She alleged disability since August 1996[1] (Tr. 233-34) due to physical impairments including pain and swelling in her arms and legs. (Tr. 256). After her application was denied (Tr. 120), and following two hearings (Tr. 37-63, 65-93), the ALJ issued a decision finding Poke not disabled since March 2009. (Tr. 20-32). The Appeals Council denied Poke's request for review making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Tr. 1-4); *See* 20 C.F.R. § 422.210(a). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court REVERSES and REMANDS the Commissioner's decision.

---

[1] The record shows that Plaintiff filed a prior application for supplemental security income in April 2005 in which she also alleged disability since August 1996. In March 2007, an ALJ issued a decision finding Plaintiff not disabled on that application, and, in April 2009, the Appeals Council denied her request for review of the ALJ's decision. (*see* Tr. 99-108,119).

## I. NATURE OF THE CASE

Poke seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

The ALJ held two administrative hearings, one in July, 2010 (Tr. 65-93) and one in March, 2011 (Tr. 37-63). Plaintiff testified at both hearings, and her testimony was largely consistent between the two hearings. Poke, age 49 at the time of the ALJ's

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

decision, completed the ninth grade and was enrolled in special education classes. (Tr. 70.) She said that she could read and write a "[l]ittle bit" (Tr. 70). During her lifetime, Poke held a variety of jobs, such as housekeeper, cook, packer, and janitor, but most of her jobs were short term or part time. (Tr. 43, 72-73, 242-49). Poke testified that she raised six children alone as a single mother (Tr. 62), and that she lived with her daughter and her daughter's infant son at the time of the hearings. (Tr 40-41, 69, 79).

Poke testified that, in a typical day, she did housework, cooked, did laundry, grocery shopped, and planted greens. (Tr. 47-48, 75). She said she took care of her infant grandchild for a few hours each day as well. (Tr. 47). She also went to church twice a month. (Tr. 49, 76-77). She said she was able to pay the "light bill and rent" herself (with money her daughter gave her) (Tr. 53, *see also* Tr. 48, 76). She claimed she did not drive because she could not see well enough to do so and did not have a license.[6] (Tr. 48, 77). Plaintiff's testimony regarding her inability to work revolved primarily around her physical impairments, including pain in her legs, knees, neck, shoulders, and arms, as well as bad eyesight and high blood pressure. (Tr. 44-46, 49-53, 74-75, 78-84).

In June 2005, psychologist Doug McKeown, Ph.D., performed a psychological evaluation of Plaintiff at the request of the state agency in connection with her prior disability application. Dr. McKeown noted Plaintiff's reports that she had completed ninth grade in school, had not worked since 1998, and had lost her driver's license because of a driving under the influence ticket in 1998 and had never renewed it. Dr.

---

[6] Poke told Doug McKeown, Ph.D, a clinical and forensic psychologist, during a disability evaluation conducted on June 7, 2005, that she received a DUI in 1998, but would be eligible to get her license back if she wanted it. (Tr. 360).

McKeown also noted Poke's reports that she had never sought any mental health treatment (and the record does not contain any mental treatment records), but sometimes felt depressed. A mental status examination showed that Plaintiff could recite the alphabet; count backward from 20 without difficulty; add and subtract single digits (but had difficulty with more complex mathematical computations); could not spell the word "world" forward or backward; could recall three items after five minutes; could repeat four digits forward and reverse three digits on a second try; could provide basic information about activities she had engaged in during the past 24 hours; had an adequate fund of information (e.g. could name the president but not the governor of Alabama); had concrete thought processes and normal thought content; and displayed adequate judgment and insight.

Dr. McKeown concluded that Plaintiff functions in the upper end of the mild range of mental retardation, but that her "difficulties appear to focus primarily on her physical symptoms and she does appear to have no significant indications of anxiety or depressive symptomology. She is concrete and limited but does demonstrate reasonable adaptive living skills." (Tr. 360-62). The next month, Dr. McKeown performed follow-up intelligence testing that showed Poke had a full IQ scale of 63, which placed her in the mild range of mental retardation. (Tr. 364-67).

In May 2009, state agency psychologist Joanna Koulianos, Ph.D. reviewed Plaintiff's medical records in connection with her disability application. Dr. Koulianos opined that Plaintiff had mild mental retardation, but that records showed she engaged in daily activities including performing simple household chores, cooking simple meals, and

taking care of her personal needs. Dr. Koulianos opined that Plaintiff's mental impairments did not meet the listings. (Tr. 448-61). Dr. Koulianos opines that Plaintiff is not significantly limited in ten areas of functioning and is moderately limited in the other ten areas of functioning. Dr. Koulianos concludes that Plaintiff could understand, remember and carry out very short simple instructions (that detailed instructions should be limited) and maintain attention for two-hour periods, but that Plaintiff would periodically require assistance or supervision to complete tasks in a timely manner; corrective action from supervisors should be offered in a simple, supportive manner; workplace changes should be infrequent; and Plaintiff's contact with the general public and co-workers should be limited and casual in nature. (Tr. 462-64).

  The ALJ found that Poke had not engaged in substantial gainful activity since her application date, and that she had severe impairments – borderline intellectual functioning, arthritis, and high blood pressure – that did not meet or medically equal the criteria of a listing at 20 C.F.R. pt. 404, subpt. P, app. 1 (the listings) (Tr. 22-26). Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity. (Tr. 26-29). From vocational expert testimony, the ALJ found that Plaintiff could perform work that existed in significant numbers, and was thus not disabled within the meaning of the Act. (Tr. 32).

## V.  ISSUE

Poke raises a single issue.  Whether the Commissioner's decision should be reversed and a disability finding entered, because Ms. Poke's Mild Mental Retardation meets Listing 12.05(c)?

## VI.  DISCUSSION

**I.  The ALJ erred in failing to consider all the evidence that Poke's Mild Mental Retardation did meet Listing 12.05 C.**

Plaintiff argues that the ALJ erred in finding Poke's mild mental retardation did not meet Listing 12.05 C .  Under Listing 12.05, a claimant is disabled if she meets the following criteria:

> "Mental retardation refers to *significantly subaverage general intellectual functioning with deficits in adaptive functioning* initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."
>
> "The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied."
>
> "C.  A *valid* verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*See* 20 CFR pt. 404, subpt. P, App. 1 § 12.05 (emphasis added).  During a consultative examination with Dr. McKeown, plaintiff took an IQ test - the Wechsler Adult Intelligence Scale - Third Edition (WAIS-III).  (Tr. 364-366).  The testing demonstrated

that Poke has a valid verbal score of 64, performance score of 69, and a full scale score of 63. (Tr. 365). Dr. McKeown diagnosed Poke as suffering from "mild mental retardation." *Id.*

The ALJ recognized that Poke's IQ scores were "within the range delineated under this paragraph" but held that Poke did not "demonstrate adaptive functioning deficits consistent with this degree of mental retardation." (Tr. 23-24). Specifically, the ALJ recognized that the evidence demonstrates that Poke

> raised six children alone, enrolled them in school, managed household bills, availed herself of community resources, looked in the newspaper for jobs, took the children to the doctor, and socializes with family and friends in church.

(Tr. 24). The ALJ, also noted Poke's claim that "she is unable to pay bills, count change, handle a savings account, or use a checkbook or money order." (Tr. 24). The ALJ did not fully credit this assertion based on Poke's testimony that she could shop for groceries, run a household and raise six children. (Tr. 24.). Poke testified she was able to pay the "light bill and rent" herself (with money her daughter gave her). (Tr. 53, *see also* Tr. 48, 76). Poke told the ALJ:

> Q. Do you pay your own household bills?
> A. No, my daughter pays it.
> Q. Have you paid your own bills in the past?
> A. Yes, ma'am.
> Q. When you were able to work, were you taking care of your bills yourself?
> A. Yes, ma'am.
> Q. Did you have a bank account to do that, or did you cash your checks and drive around and pay your bills with the different companies? Or what did you do?
> A. Yeah, whatever – I rode around and paid the bills, what I worked for.

(Tr. 76). Although it is clear from the testimony that Poke has been responsible at times for paying her own bills, the testimony does not demonstrate Poke could manage a checking or savings account or make change.

Poke argues that the ALJ erred in concluding that her "capacity for adaptive functioning despite her cognitive deficits is inconsistent with the IQ scores provided" (Tr. 29) because the ALJ relied solely on some of Poke's daily activities and failed to consider her lack of past work history and the limitations set forth by her education history. *See* Plaintiff's Brief Doc. 11 at p.11. In support of this argument Poke cites to *Cobb v. Barnhart,* 296 F. Supp.2d 1295 (N.D. Ala. 2003)(a claimant's activities of daily living and/or history of being able to hold a job does not necessarily preclude a finding of disability under 12.05 C) and *Whetstone v. Barnhart,* 263 F. Supp. 2d 1318, 1325-1326 (M.D. Ala. 2003)(evidence of daily activities and behavior and academic performance is properly considered in determining "actual intellectual functioning" under 12.05 C).

The Eleventh Circuit has held that

> "a claimant meets the criteria for *presumptive disability* under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. . . .  A valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior."

*Lowery v. Sullivan,* 979 F. 2d 835, 837 (11th Cir. 1992)(emphasis added) (citations omitted).  The ALJ recognized that Poke's IQ score put her in the "mild range of mental retardation", but concludes that the presumptive disability established by the score is rebutted because "the claimant does not demonstrate adaptive functioning deficits consistent with this degree of mental retardation."  (Tr. 23-24).

The *Lowery* court cites to *Popp v. Heckler,* 779 F. 2d 1497 (11th Cir. 1986) for the rule of law that even when a valid IQ score falls within the range establishing a mental impairment sufficient to establish presumptive disability, other evidence of claimant's daily activities and behavior may render the IQ score inconclusive.  Although the rule of law is correct; *Popp* is clearly distinguishable from the instant action on its facts.  Indeed, in *Popp,* the claimant held a two-year college associate's degree, was enrolled in a third year of college as a history major, had worked as an administrative clerk for the Army and as a statistical clerk for the VA Hospital, and had also worked as a postal clerk, soil testing technician, cashier, and an algebra teacher at a private school for grades ten through twelve.  *Id.* at 1498.  In contrast, Poke only completed the 9th grade and there is evidence that she was enrolled in special education classes.  (Tr. 70).  Additionally, Poke's work history includes mostly short term or part time employment including work as a housekeeper, cook, packer, and janitor.  (Tr. 43, 72-73, 242-49).

The court now turns its attention to whether Poke demonstrated "adaptive functioning deficits" sufficient to satisfy the diagnostic description in the introductory

paragraph of § 12.05. Poke argues that the ALJ erred because she did not consider Poke's academic performance in making the "adaptive functioning deficits" finding. Poke points to the special education instruction she received in school and her problems in the areas of reading and writing (Tr. 70) as evidence of "adaptive functioning deficits".[7] Moreover, the court notes that the ALJ did not discuss Poke's limited work history and the nature of that work in considering whether Poke met § 12.05C. Indeed, the ALJ did not specifically discuss or consider these deficits when she concluded that Poke did "not demonstrate adaptive functioning deficits consistent with this degree of mental retardation." (Tr. 24).

It is clear from the this court's reading of the ALJ's opinion that the ALJ failed to consider all the evidence before her of Poke's "adaptive functioning deficits" when she made her determination that Poke failed to meet § 12.05C. Thus, the court concludes that the ALJ's determination regarding the rebuttable presumption established by Poke's IQ test, is not supported by substantial evidence. Therefore, the court further concludes that this case is due to be remanded so the Commissioner may properly determine whether Poke meets the requirements of Listing 12.05C. *See Burgans v. Astrue,* 2010, WL 1254299 (M.D. Ala. March 26, 2010) (reversing and remanding for Commissioner's failure to inform the plaintiff of her burden of proof with respect to the "deficits of

---

[7] The ALJ, however, did discuss Poke's academic background and limited reading and writing skills in the context of considering whether Poke met § 12.05D. Indeed, the ALJ noted that the record contained conflicting evidence as to whether she attended special education classes and the degree to which her reading and writing abilities were limited. (Tr. 25).

adaptive functioning necessary to meet the Listing" and because the ALJ's determination regarding "the rebuttable presumption is not supported by substantial evidence.").

## VII. CONCLUSION

Accordingly, the court concludes that this case is due to be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion. It is ORDERED that in accordance with *Bergen v. Comm'r*, *of Soc. Sec.,* 454 F. 3 1273, 1278 n. 2 (11th Cir. 2006), the plaintiff shall have **ninety (90)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue,* 261 Fed. Appx. 241, 242 n. 1 (11th Cir. 2008).

A separate order shall accompany this opinion.

DONE this 1st day of October, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE